IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| HISCOX DEDICATED CORPORATE MEMBER, LTD., | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:21-cv-1200 |
| FELD ENTERTAINMENT, INC., *et al.*, | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This insurance contract dispute is before the Court on the Feld Defendants' Motion to Dismiss (Dkt. 10). The Feld Defendants seek dismissal of this action on the following grounds: (1) *Colorado River* abstention in light of a currently-pending, earlier-filed, and parallel state court action; (2) lack of standing, pursuant to Rule 12(b)(1) and (6), Fed. R. Civ. P.; (3) failure to state a plausible claim for relief for breach of contract, pursuant to Rule 12(b)(6); and (4) failure to join necessary and indispensable parties, pursuant to Rules 19 and 12(b)(7). The parties have fully briefed the Motion to Dismiss. Additionally, the parties presented oral arguments in the course of a telephonic hearing held on January 7, 2022. Accordingly, the Feld Defendants' Motion to Dismiss is ripe for disposition.

**I.**

In resolving a motion to dismiss, a court "must take all of the factual allegations in the complaint as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, the following facts are derived from the allegations set forth in the Complaint.

Defendants Feld Entertainment and Feld Motor Sports (the "Feld Defendants") are Delaware corporations in the business of staging various public entertainment events. Plaintiff Hiscox Dedicated Corporate Member ("Hiscox"), a United Kingdom-based private limited

1

company, serves as an insurance underwriter through the Lloyd's of London marketplace. In the Lloyd's marketplace, groups of underwriters known as "syndicates" contract to insure various types of risk. *See Allen v. Lloyd's of London*, 94 F.3d 923, 926–27 (4th Cir. 1996) (describing Lloyd's of London). The Feld Defendants have previously procured insurance policies through the Lloyd's exchange. In 2020, the Feld Defendants were the named insureds on four relevant "Cancellation and/or Abandonment Insurance Polic[ies]" issued by syndicates of Lloyd's underwriters, including Hiscox. During the coverage period, a number of the Feld Defendants' scheduled events were cancelled due to restrictions imposed by various government entities in order to address the COVID-19 pandemic. On October 8, 2021, the Feld Defendants filed suit in the Circuit Court of Fairfax County, Virginia, against all of the relevant Lloyd's underwriters, including Hiscox, seeking coverage under the four policies and damages under the policies for the cancelled events.

Subsequently, on October 28, 2021, Hiscox filed this federal diversity action. Hiscox is the only Lloyd's underwriter that is party to this suit and Hiscox confirmed at oral argument that, if all of the underwriters for the Feld Defendants' policies were joined, diversity jurisdiction would be destroyed. Hiscox's October 28 Complaint invokes a tolling agreement between the Feld Defendants and the Lloyd's underwriters which extended the time to file claims under the "Cancellation and/or Abandonment Insurance Polic[ies]," but precluded the parties from filing claims on or before October 11, 2021. Hiscox alleges that the Feld Defendants materially breached the tolling agreement by filing suit in Fairfax County one business day too early.[1] For this alleged material breach, Hiscox seeks various forms of relief in this action: (i) damages, (ii) recission of

---

[1] Hiscox asserts that the Feld Defendants could have properly filed suit on Tuesday, October 12, 2021, but no earlier. The Feld Defendants filed suit in Fairfax County on Friday, October 8, 2021, which was followed by three days of court closures for the weekend and Columbus Day on October 11, 2021.

the tolling agreement, and (iii) specific performance of the tolling agreement in the form of compulsory dismissal of the Fairfax County suit. Hiscox's Complaint also seeks a declaratory judgment that Hiscox bears no liability for coverage of events cancelled due to COVID-19 under the four relevant Lloyd's insurance policies issued to the Feld Defendants.

## II.

Analysis of the Feld Defendants' Motion to Dismiss properly begins with Defendants' contention that Hiscox has failed to join necessary and indispensable parties to this case, namely all of the relevant Lloyd's underwriters in addition to Hiscox. A defendant may seek dismissal of a complaint for "failure to join a party under Rule 19" pursuant Rule 12(b)(7), Fed. R. Civ. P. The analysis under Rule 12(b)(7) and Rule 19 first requires a court to assess whether the unnamed party or parties are "necessary" to the litigation. *Gunvor SA v. Kayablian*, 948 F.3d 214, 220 (4th Cir. 2020). Then, "if [a] party is necessary but joining it to the action would destroy complete diversity, the court must decide under Rule 19(b) whether the proceeding can continue in that party's absence." *Kayablian*, 948 F.3d at 221 (citation omitted). Whether the case can proceed turns on whether the unnamed party or parties are "indispensable" and, if so, the complaint must be dismissed. *Id.*

Rule 19(a) defines the conditions under which an unnamed party qualifies as necessary under the Rule. First, a party is necessary when, "in that person's absence, the court cannot accord complete relief among existing parties." Rule 19(a)(1)(A), Fed. R. Civ. P. Alternatively, a party is necessary if it "claims an interest relating to the subject of the action" and disposing of the action in the party's absence could: (i) "impair or impede the [outside party's] ability to protect the interest" or (ii) "leave an existing party subject to a substantial risk of incurring" inconsistent obligations. Rule 19(a)(1)(B), Fed. R. Civ. P. A party qualifies as necessary under the Rule if it

3

satisfies *either* Rule 19(a)(1)(A) *or* Rule 19(a)(1)(B). *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 434 (4th Cir. 2014).

Next, in determining whether an unnamed party is "indispensable," Rule 19(b) sets forth four factors that a court must consider and assess. First, the court must assess "the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties." Rule 19(b), Fed. R. Civ. P. Second, the court weighs whether prejudice might be lessened by protective measures, such as "(a) protective provisions in the judgment, (b) shaping the relief, or (c) other measures." *Id.* Third, the court asks "whether a judgment rendered in the person's absence would be adequate." *Id.* Fourth, and finally, the court must assess "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder." *Id.*

Application of Rule 19(a) and Rule 19(b) to this case convincingly establishes that the Lloyd's underwriters qualify as both necessary and indispensable parties. With respect to whether the underwriters qualify as necessary, as stated *supra*, a party is necessary under Rule 19(a)(1)(A) when complete relief cannot be granted without that party's presence. Here, Hiscox seeks to litigate contract claims in the absence of the large majority of the contracting parties. For instance, Hiscox's October 28 Complaint seeks the recission of the tolling agreement, yet all but one of the contracting underwriters are unnamed and absent from this action. Similarly, Hiscox requests a declaration of liabilities under insurance policies without nearly all of the relevant insurers present in this action. In these circumstances, Fourth Circuit precedent has confirmed the impossibility of granting complete relief. *See, e.g., Schlumberger Industries, Inc. v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1287 (4th Cir. 1994) (finding that "complete relief cannot be adjudicated in the absence of some … insurers"); *Delta Fin. Corp. v. Paul D. Comanduras & Assocs.*, 973 F.2d 301, 305 (4th Cir. 1992) ("The cases are virtually unanimous in holding that in suits between parties to a contract

seeking rescission of that contract, all parties to the contract . . . are necessary parties.").

The underwriters also qualify as necessary parties under Rule 19(a)(1)(B). To begin with, the underwriters, as parties to both the tolling agreement and the underlying insurance policies, clearly claim "an interest relating to the subject of the action." Because the instant action and the Fairfax County action constitute parallel actions with overlapping issues, including the liability of the Lloyd's insurers for coverage of events cancelled due to the COVID-19 pandemic, resolution of these actions may well leave the Feld Defendants "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent" judgments. In these circumstances, the Fourth Circuit has confirmed that parallel insurance coverage actions with different subsets of insurers leave the insured at risk of a split decision that affords "less than full coverage." *Schlumberger Industries*, 36 F.3d at 1287.[2] In summary, the underwriters qualify as necessary parties under both Rule 19(a)(1)(A) and Rule 19(a)(1)(B), either of which is sufficient to trigger the next step in the analysis. *Hanna*, 750 F.3d at 434.

To continue, the parties agree that at least some of the Lloyd's underwriters are, like the Feld Defendants, citizens of the state of Delaware. Accordingly, because the underwriters are necessary parties, but joining them to this action would destroy complete diversity, the analysis turns to whether the underwriters are indispensable parties under Rule 19(b). In this regard, application of the four Rule 19(b) factors compels the conclusion that the underwrites qualify as indispensable parties. As an initial matter, courts have sensibly and consistently concluded that contracting parties qualify as indispensable parties in breach of contract disputes. As the Fourth Circuit has stated: "a contracting party is the paradigm of an indispensable party." *Kayablian*, 948

---

[2] Here, it is worth noting that the underwriters are only severally liable under the Lloyd's insurance contracts. Accordingly, a split judgment for the Feld Defendants in one forum and the underwriters in another forum could leave the Feld Defendants with only partial insurance coverage.

F.3d at 221. In the context of insurance contracts, the Fourth Circuit has cited the Seventh Circuit for the proposition that, "where multiple insurers cover the insured's same liability for the same time period, all the insurers are indispensable parties to an adjudication as to coverage." *Schlumberger Industries*, 36 F.3d at 1286 (citing *Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assurance Co.*, 417 F.2d 1113 (7th Cir.1969)).

Under the first Rule 19(b) factor, a ruling in the absence of the underwriters might well prejudice both the underwriters and the Feld Defendants. As noted, Hiscox seeks to rescind the tolling agreement to which the other underwriters are also parties. Hiscox also seeks damages for breach of the tolling agreement which, if Hiscox prevailed, may present difficult questions of allocation of damages between Hiscox and the absent underwriters. Moreover, the Feld Defendants also face the prospect of litigating the same claims in both state and federal court, with the possible result that inconsistent decisions could leave the Feld Defendants with only partial recovery under the insurance contracts. *See Schlumberger Industries*, 36 F.3d at 1287. And, as to the second Rule 19(b) factor, the parties suggest no protective measures which would alleviate the risk of prejudice due to parallel litigation.

To continue, the Fourth Circuit has indicated that the third Rule 19(b) indispensability factor "focuses on the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *Kayablian*, 948 F.3d. at 222 (citation omitted). In this regard, the Fourth Circuit has emphasized that parallel litigation often "produce[s] incomplete, inconsistent, and inefficient settlement of this dispute." *Id.* In this case, the pending state and federal actions have the potential to address substantially similar claims and defenses. For instance, Hiscox's request for a declaratory judgment in this action mirrors the Feld Defendants' insurance coverage claims in the state court action. By the same token, Hiscox's claims relating to breach of the tolling

agreement here stem from the Feld Defendants' alleged untimely filing of the Fairfax County action, which the underwriters may raise as an affirmative defense in that action. On a related point, the final Rule 19(b) factor asks whether a plaintiff possesses an adequate remedy if a suit is dismissed for nonjoinder. As stated, the claims presented in this action may be presented in the Fairfax County action, and Hiscox offers no reason to think that a Virginia Circuit Court is not well-equipped to assess contractual claims bound by Virginia law.

In sum, the four factors set forth in Rule 19(b) all weigh persuasively in favor of the conclusion that the unnamed, absent underwriters are indispensable parties under Rule 19(b). Thus, because the underwriters are necessary and indispensable parties which may not be joined without destroying diversity, it is appropriate to dismiss this suit pursuant to Rule 12(b)(7).

### III.

Seeking to avoid dismissal, Hiscox responds with two inappropriate attempts to convert this individual action into representative litigation. First, Hiscox requests leave to amend its Complaint in order to convert this action into a class action on behalf of all of the relevant Lloyd's underwriters, which Hiscox claims would then permit joinder of the minimally-diverse underwriters. Second, in the alternative, Hiscox represents that—after the filing of the Feld Defendant's Motion to Dismiss—all of the relevant Lloyd's underwriters executed an agreement in which the underwriters consented to be bound by any decisions rendered in this case. Hiscox contends that this recent, eleventh-hour agreement allays many of the Rule 19(b) concerns outlined above and thus compels the conclusion that the underwriters are not indispensable. Plaintiff's contentions in this respect are not persuasive.

With respect to the first argument, Hiscox's request for leave to amend the Complaint to include class action allegations must be denied as inappropriate. To begin with, the October 28

Complaint clearly states that Hiscox is proceeding in its individual capacity, and Hiscox's briefing emphatically confirms that Hiscox intends to litigate this suit on an individual basis. To convert this suit from an individual action by a single insurer to a class action by over one hundred underwriters would mark a radical shift in the nature of this action. In these circumstances, the Fourth Circuit has instructed that "[b]elated claims which change the character" of lawsuits prejudice defendants and may serve as a basis to deny leave to amend. *Deasy v. Hill*, 833 F.2d 38, 41–42 (4th Cir. 1987). Here, the Feld Defendants would clearly be prejudiced by the proposed conversion to a class action, insofar as that amendment would multiply the Feld Defendants' adverse parties one hundredfold and significantly alter the potential damages faced and resources necessary to mount a defense.

Furthermore, Hiscox's proposed amendment would also be futile. As noted *supra*, Lloyd's policies are underwritten by groups of underwriters known as syndicates. In essence, Hiscox's request to proceed as a class representative for all relevant Lloyd's underwriters amounts to a request to litigate this suit on a syndicate-wide basis. Persuasive and controlling authority confirms that a syndicate of Lloyd's underwriters may not appropriately litigate as a class. *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 195 (1990) (holding that, for diversity purposes, the citizenship of partnerships and unincorporated associations is determined by the citizenship of all members); *Indiana Gas Co. v. Home Ins. Co.*, 141 F.3d 314, 321 (7th Cir. 1998) (applying *Carden* in these circumstances). Importantly, courts have "uniformly concluded" that Lloyd's syndicates constitute unincorporated associations and therefore, under *Carden*, possess the citizenship of each of their members (*i.e.* the named underwriters). *Hillen v. Lloyd's, London*, No. 1:18-CV-112, 2018 WL 10501628, at *2 (E.D. Va. Mar. 26, 2018) (*citing E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998)). As such, if a Lloyd's syndicate sues under diversity

jurisdiction in federal court, the syndicate's underwriters must satisfy the complete diversity requirement. *Carden*, 494 U.S. at 195.[3]

Hiscox attempts to inappropriately circumvent the *Carden* requirement of complete diversity for unincorporated associations, such as Lloyd's syndicates, by seeking to disguise a Lloyd's syndicate as a minimally-diverse class under the Class Action Fairness Act, 18 U.S.C. § 1332(d). Plaintiff's attempt to end-run around jurisdictional requirements must be rejected. Particularly instructive here is the Seventh Circuit's *Indiana Gas Co. v. Home Ins. Co.* decision, which rejected the contention that a syndicate of Lloyd's underwriters may sue as a class. Therein, the Seventh Circuit stated that it would be a mistake to think that "the Supreme Court's cases treating unincorporated associations as citizens of every state of which any member is a citizen may be avoided by [designating] one partner or member as a 'representative' of the rest." 141 F.3d 314, 321 (7th Cir. 1998). Stated otherwise, the "complete-diversity requirement cannot be transmuted into a minimal-diversity requirement so easily," because procedural rules may not expand the statutory subject-matter jurisdiction of the federal courts. *Id.* Put simply, Hiscox's request to transform this suit into a syndicate-wide class action is an inappropriate attempt to avoid the Supreme Court's holding in *Carden*. Therefore, Plaintiff's request for leave to amend to assert class action allegations must be denied as futile.[4]

---

[3] The only exception to this principle applies when an unincorporated association sues as a member of a class, in which case the association's citizenship is determined pursuant to a provision of the Class Action Fairness Act. *See* 18 U.S.C. § 1332(d)(10). But that provision is inapplicable here: Hiscox does not seek to include a Lloyd's syndicate as a member of a larger class. Rather, Hiscox seeks to inappropriately form a class from just one or a small number of syndicates, and the holding of *Carden* therefore governs the analysis.

[4] Hiscox cites just one unpersuasive and unpublished district court decision for the proposition that a syndicate of Lloyd's underwriters may sue as a class. *Certain Underwriters at Lloyd's of London v. Illinois Nat. Ins. Co.*, No. 09-cv-4418, 2012 WL 4471564 (S.D.N.Y. Sept. 24, 2012). That decision failed to discuss the jurisdictional issues raised by *Carden*. It also acknowledged that several federal courts have declined to "recast insurance coverage actions involving Lloyd's underwriters as class actions in order to [satisfy the requirements of] diversity jurisdiction." *Id.* at 7 (citing cases).

Hiscox is also mistaken that the eleventh-hour cooperation agreement among the Lloyd's underwriters materially alters the "indispensable parties" analysis. To the contrary, the contract proffered by Hiscox does not compel a different result under Rule 19(b). First, the agreement among the underwriters does not eliminate the risk of inconsistent judgments, because the Feld Defendants are not a party to the contract. Suppose, for example, that Hiscox prevails on its declaratory judgment claim before this Court, resulting in a determination that Hiscox is not liable to cover the Feld Defendants' cancelled events under the Lloyd's policies. The agreement among the underwriters would not bar the Feld Defendants from proceeding in Virginia state court against the other underwriters, giving rise to a risk of inconsistent judgments.[5] Moreover, even if the agreement precludes the underwriters from filing other suits against the Feld Defendants, it does not erase the fact that inefficient and duplicative litigation has already been filed here and in Virginia state court, where the parties also have adequate remedies. Thus, even taking the underwriters' agreement into account, application of the Rule 19(b) factors still compels the conclusion that the underwriters are indispensable parties.

Moreover, Hiscox's out-of-court agreement with the other underwriters also represents an inappropriate attempt to circumvent jurisdictional and procedural requirements. To permit parties to contract artfully around the requirements of mandatory joinder and complete diversity would vitiate those requirements. To offer one example, as discussed *supra*, the Supreme Court's decision

---

[5] It is also worth noting that a judgment for Hiscox in this matter would be unlikely to have preclusive effect over the Feld Defendants' claims against the other underwriters in Virginia state court. Virginia courts apply *res judicata* only where the same parties are present in the first and second suits or there is privity among the parties to the first and second suits. "The touchstone of privity for purposes of *res judicata* is that a party's interest is so identical with another that representation by one party is *representation of the other's legal right*." *State Water Control Bd. v. Smithfield Foods, Inc.*, 261 Va. 209, 214 (2001) (emphasis added). Importantly, under the Lloyd's insurance agreements, the parties are not jointly liable, meaning that each underwriter is responsible only for its proportionate amount of the coverage obligation. A judgment in this Court that Hiscox is not liable to pay Hiscox's share of the coverage obligation has no direct impact on the rights or obligations of the other underwriters with respect to their shares. In other words, Hiscox and the other underwriters do not share an "identical," joint obligation and therefore lack a "unity of . . . legal right," so the doctrine of *res judicata* would not apply in Virginia courts. *See id.* at 215.

in *Carden* established that the citizenship of a limited partnership or unincorporated association is determined by the individual citizenship of its members. Therefore, to satisfy 28 U.S.C. § 1332's requirement of complete diversity, all members of an unincorporated association must be diverse from all opposing parties. *See Carden*, 494 U.S. at 195. The members of an association may not ignore the Supreme Court's holding in *Carden*, and effectively expand the scope of federal subject-matter jurisdiction, by sending a single diverse member to litigate in federal court supported by an out-of-court agreement among the non-diverse members to abide by the judgment. *See Brickwood Contractors, Inc. v. Datanet Eng'g, Inc.*, 369 F.3d 385, 390 (4th Cir. 2004) ("Subject-matter jurisdiction cannot be conferred by the parties . . ."); *Indiana Gas*, 141 F.3d at 321. In the same vein, an out-of-court agreement does not give a federal court license to disregard the joinder requirements of Rule 19, Fed. R. Civ. P.[6] Accordingly, the contract among the unnamed, non-diverse underwriters does not rescue Hiscox from dismissal.

### IV.

In sum, for reasons stated in this Memorandum Opinion, Hiscox's Complaint must be dismissed for failure to join necessary and indispensable parties, namely the other underwriters for the Lloyd's insurance policies. The Feld Defendant's Motion to Dismiss raises several other bases for dismissal, including *Colorado River* abstention, lack of standing, and failure to state a plausible

---

[6] The cases cited by Hiscox are inapposite. For example, Hiscox cites a handful of cases which assess whether a single Lloyd's underwriter qualifies as a "real party in interest" under Rule 17, but which include no discussion of the impact of an out-of-court cooperation agreement on the joinder analysis under Rule 19. *See, e.g.*, *Honey v. George Hyman Const. Co.*, 63 F.R.D. 443 (D.D.C. 1974). Hiscox cites a single Fourth Circuit case in support of its use of an out-of-court cooperation agreement: *Virginia Electric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78 (4th Cir. 1973). There, the Fourth Circuit affirmed a district court's determination that an insurer was not an indispensable party under Rule 19. However, the facts of *Virginia Electric* are readily distinguishable. Importantly, that case involved a substantive subrogation-of-rights agreement between the plaintiff and the out-of-court insurer, rather than the agreement to be bound proffered by Hiscox here. Additionally, unlike this case, the *Virginia Electric* plaintiff lacked an adequate remedy under state law and the parties had not filed any parallel litigation. Accordingly, because the *Virginia Electric* court entertained a very different set of facts than the ones presented here, that decision does not control the outcome of this case.

claim for breach of contract. These contentions raise plausible questions about Hiscox's Complaint, such as whether the Feld Defendants' alleged filing of the state court action just one business day too early constituted a material breach of the tolling agreement. However, because this matter will be resolved on the basis of nonjoinder pursuant to Rules 19 and 12(b)(7), Fed. R. Civ. P., it is unnecessary to reach or decide any alternative arguments for dismissal.

      Accordingly, the Feld Defendants' Motion to Dismiss must be granted. An appropriate Order will issue separately.

January 18, 2022
Alexandria, VA

/s/
T. S. Ellis, III
United States District Judge